THE CITY NATIONAL BANK, ADMINISTRATOR, *vs.* THOMAS MORRISSEY ET ALS.

Third Judicial District, Bridgeport, April Term, 1922.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Without delivery and acceptance, no conveyance of real estate is valid.

The mere endorsement of a promissory note will not effect a transfer of title: there must be delivery and acceptance.

To constitute a gift *inter vivos* two things are necessary: delivery of possession to the donee, and an intent that with such possession the title shall immediately pass.

In the present case the plaintiff's testator, who owned notes, mortgages, and lands, endorsed the notes, signed quitclaim deeds of the mortgages, and also a quitclaim deed of his lands, and placed all these papers in the safe of a lawyer whom he sometimes employed, without giving to him or to anyone else any information or instructions concerning them, and there they were found in the same condition after his death. *Held* that inasmuch as there was no delivery of any of these papers, the title to the property remained in the testator up to his death and passed to his administrator with the will annexed.

A loan by a testator to his daughter will not be regarded as an advancement, if the circumstances indicate that he had no such intention.

Submitted on briefs April 13th—decided June 3d, 1922.

SUIT to determine the title to certain lands, mortgages and notes, brought to and reserved by the Superior Court in Fairfield County, *Banks, J.*, upon the facts alleged in the complaint, for the advice of this court. *Judgment advised for the plaintiff.*

The material facts, admitted by all parties, are the following: Thomas F. Martin was the owner of two pieces of land, an unsecured note, and certain notes secured by mortgages on real estate. On March 1st, 1915, he executed quitclaim deeds of some of these mortgages to Thomas Morrissey, trustee, expressing his purpose to assign the mortgages to the grantee, but

making no other reference to a trust, and endorsed some of the notes secured by these mortgages to Morrissey, trustee, and some in blank. On the same day Martin executed a quitclaim deed of the two pieces of land to Morrissey, trustee. On March 1st, 1915, Martin also signed a letter addressed to Morrissey, trustee, in which he stated that he had that day assigned and transferred to him "various notes and the mortgages securing the same," and directed that after his death Morrissey assign and transfer one third in value of these notes and mortgages to each of his two daughters, and hold the remainder as trustee under conditions specified in his will. He did not mention in this letter the deed of the two pieces of real estate.

On the same day, March 1st, 1915, Martin made his will, in which he gave one third of his real and personal property to each of his daughters, and the remaining one third in trust to Morrissey to pay the income to Martin's son during his life, and after his death to pay the principal equally to his two daughters.

On November 30th, 1915, and subsequently, Martin, in the same manner, endorsed and assigned certain other notes and mortgages securing them, to Morrissey, trustee.

On May 9th, 1917, Morrissey, trustee, at Martin's request, executed and delivered to Martin quitclaim deeds of the two pieces of real estate and of all the mortgages before assigned to him by Martin, and therein named Martin's three children as grantees.

On November 5th, 1920, Martin bought from the defendant Hogan a note secured by mortgage, and caused her to endorse it and to execute a quitclaim deed of the mortgage to his three children.

On December 8th, 1920, Martin gave his daughter Marguerite Hurley $1,000, for which she made and delivered to him her two notes for $500 payable to

herself, her sister and her brother, and a mortgage on real estate to secure the notes.

Martin placed all of these deeds and notes and the letter addressed to Morrissey, trustee, in the safe of a lawyer whom he sometimes employed, without giving to him or to anyone any information or instructions concerning them; and all these papers were found thus in this safe after Martin's death.

Martin died January 21st, 1921, leaving only three children, the defendants Mary Edith Wren, Marguerite Hurley, and Albert V. Martin. Thomas Morrissey, named as executor and trustee in Martin's will, declined to act in either capacity, and thereupon the plaintiff was appointed administrator with the will annexed and trustee. The plaintiff was also appointed and qualified as conservator of the defendant Albert V. Martin.

The plaintiff claimed (a) an adjudication "that the mortgages, notes and real estate described in the complaint were the property of said Thomas F. Martin at the time of his decease"; (b) that the defendants execute any conveyances necessary to vest the title in the plaintiff administrator; (c) any further relief the plaintiff should be entitled to in equity.

*Carl Foster* and *Frederick E. Morgan,* for the plaintiff.

*Charles Stuart Canfield,* for the conservator of Albert V. Martin.

*Thomas M. Cullinan, John J. Cullinan* and *Vincent L. Keating,* for Thomas Morrissey *et al.*

BURPEE, J. It is manifest that Thomas F. Martin did not deliver any of the notes, or any of the quitclaim deeds of mortgages, or the deeds of the two pieces of

land, to any person. When he placed them in the safe of his lawyer, without information or instructions concerning them, he did not part with the possession and control of these instruments. He never made anyone the depositary of any of them. His undelivered letter to Morrissey was not an expression of his intention in making a delivery, because he made no delivery, and he gave the letter no effect. Hence the essential features of the delivery of a deed to a third person, to be by him delivered to, or applied to the benefit of, the grantee after the grantor's death, do not appear in this case.

Delivery of possession is the foundation of a transfer; without delivery there can be no transfer. *Grilley* v. *Atkins,* 78 Conn. 380, 62 Atl. 337; *Candee* v. *Connecticut Savings Bank,* 81 Conn. 372, 71 Atl. 551. Martin did not place any of these instruments in the actual or constructive possession or control of any person. Neither by act nor by word did he deliver possession of any instrument and pass title to it immediately; and of course Morrissey, not knowing what Martin had done, did not indicate by any act or expression his intention to assent or consent to the transfer to him. Without delivery and acceptance no conveyance of real estate is valid. *Wiley* v. *London & Lancashire Fire Ins. Co.,* 89 Conn. 35, 39, 92 Atl. 678; 18 Corpus Juris, 196–201.

The mere endorsement of a promissory note will not effect a transfer of title. There must be delivery and acceptance. *Clark* v. *Sigourney,* 17 Conn. 510, 519; 8 Corpus Juris, 846, 847.

To make a valid gift *inter vivos,* "two things are necessary: delivery of possession to the donee, and an intent that with the possession the title shall immediately pass." *Organized Charities Asso.* v. *Mansfield,* 82 Conn. 504, 509, 74 Atl. 781; *Main's Appeal,* 73 Conn.

638, 48 Atl. 965; *Meriden Trust & Safe Deposit Co.* v. *Miller*, 88 Conn. 157, 163, 99 Atl. 228.

It is suggested in the briefs that when Martin bought the note and mortgage on November 5th, 1915, and caused the note to be endorsed and the mortgage to be quitclaimed to his children, and when on December 8th, 1920, he gave one of his daughters $1,000, for which she gave him two notes payable to herself and her sister and brother and secured by a mortgage, he made advancements to his children. But the circumstances disclose no such intention. These notes and mortgages were placed by Martin with the others in the safe of his lawyer, and Martin retained possession of them. He never recorded them. None of his children paid any consideration for either of them, and it is conceded that Martin collected the income from them during his life. It is evident that he did not intend that title to them should pass at any time before his death. Then this title was still in his estate. *Hough* v. *Bailey*, 32 Conn. 288, 290; *McDermott* v. *McDermott*, 97 Conn. 31, 115 Atl. 638; *Dana* v. *Dana*, 154 Mass. 491, 492, 28 N. E. 905.

The Superior Court is advised to render judgment for the plaintiff.

In this opinion the other judges concurred, except GAGER, J., who concurred in the result, but died before the opinion was written.